UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WALTER A. WHITE,

                    **Plaintiff,**

          v.                                        9:02-CV-0962
                                                               (FJS/GHL)

STATE OF NEW YORK; ISRAEL RIVERA,
Superintendent, Washington Correctional
Facility; FRED PELICONE,
Sergeant; and C.O. ADAMS,

                    **Defendants.**
_____

**APPEARANCES**                                        **OF COUNSEL**

**OFFICE OF LEONARD J. LEVENSON**      **LEONARD J. LEVENSON, ESQ.**
225 Broadway
New York, New York 10007
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**             **STEPHEN M. KERWIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

       Walter White, a New York State Department of Correctional Services' ("DOCS") inmate, brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants Fred Pelicone and C.O. Adams were deliberately indifferent to his serious medical needs in violation of the Eighth

and Fourteenth Amendments and that Defendant Rivera was deliberately indifferent to his safety in violation of the same Amendments. Plaintiff alleges a second cause of action for negligence against Defendants. He seeks $500,000 in punitive damages, $500,000 in compensatory damages, and $500,000 for pain and suffering.

Currently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II. BACKGROUND[1]

Plaintiff is presently an inmate at DOCS' Washington Correctional Facility. He alleges that on March 25, 2000, at 1:00 a.m., he was assaulted in his dormitory's bathroom as he stood at a urinal. Specifically, he contends that an unknown inmate approached him from behind and struck him with a blunt object on the left side of his face, causing him to fall against the wall and his nose to bleed. Plaintiff believes that this assault was in retaliation for an incident in which inmates were engaging in horseplay and one of them was hurt as a result. The inmates tried to enlist Plaintiff in a scheme to claim that the incident was an accident, but he refused. On January 9, 2000, Plaintiff wrote a letter to Defendant Rivera regarding this incident, which resulted in an

---

[1] The Court derived the facts of this section from Defendants' statement of facts in their memorandum of law, which Plaintiff has adopted. *See* Dkt. No. 69, Affirmation of Leonard J. Levenson, dated August 17, 2005 ("Levenson Aff."), at ¶ 2 ("Plaintiff adopts the Statement of Facts set forth in defendant[s]' Memorandum of Law . . . .").

The Court also notes that Mr. Levenson's affirmation does not comply with Local Rule 7.1(a)(2) which provides, in pertinent part, that "[a]n affidavit must *not* contain legal arguments . . . ." *See* L.R. 7.1(a)(2) (emphasis added).

investigation. As part of the investigation, the investigating officer offered Plaintiff protective custody. Plaintiff, however, declined and signed a document attesting to the same.

Following the March 25, 2000 assault, at approximately 9:00 a.m. the same day, Plaintiff sought treatment at the facility's infirmary, where, he claims, Defendant C.O. Adams told him that the medical staff was too busy to see him and that they would call him back to the infirmary for treatment later. On March 26, 2000, Plaintiff's housing unit officer called the infirmary, and Plaintiff was seen there that day.

The next day, March 27, 2000, a physician examined Plaintiff and told him that "You'll be okay" and dismissed him. On March 28, 2000, a nurse saw Plaintiff and gave him seven pills for pain. That same day, officers placed Plaintiff in protective custody.

Plaintiff alleges that, after Defendants denied him medical treatment, he wrote two notes seeking assistance in filing a grievance, one to his grievance officer and one to his counselor. Neither responded. He further claims that he asked two correction officers for grievance forms, but they told him to keep his big mouth shut. Plaintiff never filed a formal grievance regarding these incidents.

Based on these facts, Defendants argue that they are entitled to summary judgment with respect to all of Plaintiff's claims because he has failed to exhaust his administrative remedies as 42 U.S.C. § 1997e(a) requires.

### III. DISCUSSION

**A.     Standard of Review**

*1. Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment where the moving party carries its burden of showing that there is no genuine issue of material fact. *See Jeffers v. Goord*, No. 9:99 CV 0335, 2005 WL 928628, *3 (N.D.N.Y. Apr. 4, 2005) (citations omitted). In determining whether summary judgment is appropriate, the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* (quotation omitted). If a reasonable jury could return a verdict for the nonmoving party, then there exists an issue of material fact, and summary judgment is inappropriate. *See id.* (quotation omitted).

*2. Prison Litigation Reform Act*

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The Court reasoned that the PLRA's "dominant concern [is] to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court," *id.* at 528, and to clarify the contours of the controversy once it is

litigated, *see id.* at 525 (citation omitted).

Under the PLRA, plaintiffs have an "obligation to exhaust such remedies when Congress has specifically mandated" that they do so. *Giano v. Goord*, 250 F.3d 146, 151 (2d Cir. 2001) (citations omitted). Furthermore, all inmate suits fall under the PLRA's purview, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

### *3. DOCS' Grievance Process*

DOCS' grievance process is a three-tier procedure that prisoners generally must exhaust before seeking redress in federal court. First, a prisoner must file a grievance with the facility's Inmate Grievance Resolution Committee ("IGRC") within fourteen days of the incident. *See* N.Y. Corr. Law. § 139 (McKinney 2005); 7 N.Y.C.R.R § 701.7(a)(1). The IGRC then reviews the grievance and attempts to resolve it informally; if the inmate is satisfied with the resolution, then it is entered on the grievance within seven business days. *See* 7 N.Y.C.R.R. § 701.7(a)(3). If an informal resolution is unsuccessful, then a hearing is held and the inmate may appeal to the facility's superintendent within four days of the IGRC's action. *See* 7 N.Y.C.R.R. § 701.7(a)(4), (b). Finally, if he receives an adverse superintendent's response, the prisoner may appeal that decision to the Central Office Review Committee ("CORC") within four days of its receipt. *See* 7 N.Y.C.R.R. § 701.7(c). The CORC must then issue a decision within twenty days. *See id.*

### *4. Second Circuit's Construction of the PLRA's Exhaustion Requirement*

Exhaustion under the PLRA is not jurisdictional in the Second Circuit; rather, it is an affirmative defense for defendants to assert, subject to a plaintiff's claim of estoppel or waiver. *See Barad v. Comstock*, No. 03 CV 736, 2005 WL 1579794, *4 (W.D.N.Y. June 30, 2005) (internal citations omitted). In *Hemphill,* the Second Circuit instructed district courts to conduct a three-part inquiry in cases, such as the present one, "where a prisoner plaintiff plausibly seeks, to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a)." *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). As an initial matter, a district court should ascertain (1) whether administrative remedies existed, and if so, whether the defendants' actions rendered those remedies unavailable to the plaintiff;[2] (2) whether the defendants waived or are estopped from raising an affirmative defense of non-exhaustion because they interfered with the plaintiff's effort to exhaust; and (3) whether there exist any alleged "special circumstances" that would excuse the prisoner's failure to exhaust.[3] *See Barad*, 2005 WL 1579794, at *5 (citing *Hemphill*, 380 F.3d at

---

[2] Plaintiff does not argue that administrative remedies were not available to alleviate his injuries. Rather, he asserts that, although the facility had a grievance procedure, his attempt to use this process was unsuccessful. Plaintiff's lack of success does not render DOCS' grievance procedure unavailable. The procedure was in place at the time Plaintiff sought to file a grievance. The Court, therefore, concludes that administrative remedies were available to Plaintiff. *See Hemphill*, 380 F.3d at 686 (holding that, where a prison provided a grievance procedure that inmates could utilize, administrative remedies were available).

[3] The Second Circuit has not specifically identified what constitutes "special circumstances" but has stated that courts must determine whether such circumstances exist "'by looking at the circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way.'" *Barad*, 2005 WL 1579794, at *5 (quoting *Giano*, 380 F.3d at 678). Moreover, the court has held that "special circumstances" exist where an inmate reasonably, even if erroneously, interprets DOCS' regulations. *See id.* (citations omitted).
(continued...)

686) (other citations omitted); *Ruggiero v. County of Orange*, No. 03 CIV 1396, 2005 WL 2187427, *3 (S.D.N.Y. Aug. 2, 2005) (citations omitted).

**B.       Plaintiff's Compliance with the PLRA's Exhaustion Requirement**

*1. Did Defendants Forfeit Their Exhaustion Defense?*

A defendant is estopped from asserting the exhaustion defense when his actions (e.g., by threats or deception) hinder an inmate-plaintiff from seeking redress, that is, by making administrative relief in effect unavailable. *See Barad,* 2005 WL 1579794, at *6 (citing *Abney*, 380 F.3d at 667; *Ziemba*, 366 F.3d at 163-64; *Hemphill*, 380 F.3d at 686, 688-89).

Plaintiff argues that Defendants forfeited their exhaustion defense by using threats or intimidation. Plaintiff, however, offers no specific facts to support this assertion. Plaintiff never alleges that any particular Defendant hindered him in any way from seeking administrative relief. His only allegation is that two officers, whose identities are to date unknown to Plaintiff, told him to shut up. Under similar circumstances, the court in *Barad* concluded that, because the plaintiff only alleged that the medical staff in general, and not the particular defendants in the case, prevented him from filing a grievance, the defendants had not forfeited the exhaustion defense. *See Barad*, 2005 WL 1579794, at *6. For the same reason, the Court finds that

---

[3](...continued)
Similarly, an inmate's reliance upon the court's earlier construction of the law, even if found to be erroneous later, justifies a finding of "special circumstances." *Id.* (citations omitted). The facts of this case do not suggest that any of these special circumstances exist.

Defendants have not forfeited their exhaustion defense by engaging in threats or intimidation.[4]

### 2. Do "Special Circumstances" Exist Here to Excuse Plaintiff's Noncompliance with DOCS' Grievance Procedures?

Plaintiff does not explicitly argue that there are "special circumstances" that would excuse his failure to exhaust his available administrative remedies. Rather, he argues that the Court should not retroactively apply the Supreme Court's rulings in *Porter v. Nussel* and *Booth v. Churner,* 532 U.S. 731 (2001), both of which require inmate-plaintiffs to exhaust all administrative remedies prior to bringing an action in federal court, because at the time that Plaintiff's grievance arose, Second Circuit law did not require him to exhaust administrative remedies before filing suit in federal court.

In *White v. New York*, the court considered this argument in addressing a claim that Plaintiff had filed in another matter, noting that "plaintiff's suit concerns prison life, and thus *Booth* and *Porter* are applicable. The Court disagrees with plaintiff's contention that because the facts in this case arose in 1997 and 1998, *Booth* and *Porter* should not be retroactivity applied." No. 00 CIV. 3434, 2002 WL 31235713, *2 (S.D.N.Y. Oct. 3, 2002). In rejecting Plaintiff's argument, the court noted that "[c]ourts in this Circuit have consistently applied *Porter* and *Booth* retroactively."[5] *Id.* (collecting cases). These holdings are consistent with the Supreme

---

[4] Defendants note that Plaintiff had both the capacity and the materials to write his own grievance, as evidenced by his April 3, 2000 letter to the Acting Deputy Superintendent regarding a foreign object in his food. Moreover, on April 4, 2000, a nurse and a counselor went to Plaintiff's cell, and he did not enlist their help in writing a grievance. This further supports the Court's conclusion that Defendants did not hinder Plaintiff from filing a grievance.

[5] In *Petit v. Bender*, another court considered the argument that it should not apply *Porter* retroactivity and stated "[c]ourts in this Circuit have repeatedly rejected this argument and held
(continued...)

Court's decision in *Harper*, in which the Court held that

> [w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993).

Accordingly, the Court rejects Plaintiff's retroactivity argument and holds that the Supreme Court's decisions in *Booth* and *Porter* control this case.[6]

### 3. Has Plaintiff Exhausted Administrative Remedies?

Having concluded that Plaintiff has failed to establish any basis upon which the Court could excuse him from complying with the PLRA's exhaustion requirement, the Court must now determine whether, in fact, Plaintiff exhausted his administrative remedies prior to commencing this action. As previously noted, the PLRA requires all prisoners to exhaust all of their administrative remedies prior to bringing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Porter*, 534 U.S. at 532 (holding that the exhaustion requirement "applies to *all* inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong[]"(emphasis added)). The relevant administrative remedy

---

[5](...continued)
that claims filed prior to the Court's decision in [*Porter v.*] *Nussle* must meet the exhaustion requirements." No. 99 CIV. A. 0969, 2003 WL 22743485, *4 n.2 (S.D.N.Y. Nov. 19, 2003) (citations omitted).

[6] The Court notes that, given the fact that Plaintiff had this same argument rejected in another case that he filed, this result should not surprise him.

in this case is DOCS' three-tier grievance procedure, which requires, as an initial matter, that a prisoner file a grievance with the facility's IGRC within fourteen days of the incident. *See* 7 N.Y.C.R.R. § 701.7(a)(1).

Although Plaintiff wrote two notes seeking assistance with filling out a grievance form, he never filed a grievance. Nor did he comply with any of the enumerated procedures for doing so. Moreover, even assuming that these two notes constituted a grievance filing, the fact that he did not receive a response does not excuse his failure to exhaust the remainder of the administrative remedies available to him. *See Leacock v. New York City Health Hosp. Co.*, No. 03 Civ. 5440, 2005 WL 483363, *7 (S.D.N.Y. Mar. 1, 2005) (citing *Gibson v. Goord*, 280 F. 3d 221, 223-24 (2d. Cir. 2002) (holding that an inmate must completely exhaust the administrative process available to him even where there is no adjudication of a grievance)) (other citation omitted). The Court, therefore, concludes that, because Plaintiff did not file a grievance as DOCS' regulations require, he has failed to exhaust his administrative remedies.[7]

---

[7] The Court notes that to the extent that Plaintiff might argue that the Court should excuse him from the PLRA's exhaustion requirement because administrative remedies are no longer available to him as a result of his failure to file his grievance "within 14 calendar days of [the] alleged occurrence," 7 N.Y.C.R.R. 701.7(a)(1), this argument must fail. In a factually similar situation, the court held that a plaintiff's failure to file a grievance "within 14 calendar days" resulted "in a bar of his action[] under 42 U.S.C. § 1983 by operation of the PLRA." *Soto v. Belcher*, 339 F. Supp. 2d 592, 596 (S.D.N.Y. 2004); *see also Williams v. Comstock*, 425 F.3d 175, 177 (2d Cir. 2005) (holding that, although the plaintiff was physically and mentally unable to file a grievance within fourteen days, he was not excused from the exhaustion requirement where he waited two years to file the grievance). Additionally, the court concluded that, "[b]ecause any administrative remedies [the plaintiff] may have had are now time-barred, this action is dismissed with prejudice." *Soto*, 339 F. Supp. 2d at 596 (citing *Burns v. Moore*, No. 99 Civ. 0966, slip op., 2002 WL 91607, at *7 (S.D.N.Y. Jan. 24, 2002) (holding that because the plaintiff no longer had available administrative remedies, his action must be dismissed with prejudice)); *see also Giano v. Goord*, 380 F. 3d 670, 677 (2d Cir. 2004) (holding that "prisoners
(continued...)

Accordingly, the Court grants Defendants' motion for summary judgment and dismisses Plaintiff's claims with prejudice because Plaintiff has failed to, and is no longer able to, exhaust all of his administrative remedies.

## IV. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**; and the Court further

**ORDERS** that the Clerk of the Court enter judgement in Defendants' favor and close this case.

**IT IS SO ORDERED.**

**Dated:** January 4, 2006
Syracuse, New York

_____
Frederick J. Scullin, Jr.
Chief United States District Court Judge

---

$^7$(...continued)
may not circumvent the exhaustion requirement simply by waiting to bring a Section 1983 action until their administrative complaints are time-barred . . . . And, allowing prisoners to bypass administrative procedural rules with impunity would subvert Congress's desire to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" (quoting *Porter*, 534 U.S. at 525, 122 S. Ct. 983) (footnote omitted)).